UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DS SMITH PLASTICS LIMITED, and RAPAK, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | 15 C 5760 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| PLASCON PACKAGING, INC., BRINKER INTERNATIONAL, INC., and THE WASSERSTROM COMPANY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

DS Smith Plastics Limited and its affiliate Rapak, LLC (together, "DS Smith") allege that Plascon Packing, Inc., Brinker International, Inc., and the Wasserstrom Company infringed U.S. Patent No. 6,116,467 (the "'467 Patent"). Doc. 1. Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), DS Smith moves to dismiss Plascon's and Brinker's inequitable conduct counterclaim and to strike their inequitable conduct affirmative defense. Doc. 41. The motion is denied.

**Background**

Although this is a patent case, the court applies the Seventh Circuit's Rule 12(b)(6) standards to DS Smith's motion. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (noting that "procedural matter[s]" are "governed by the law of the regional circuit"); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("This court reviews the dismissal of a claim under Rule 12(b)(6), a matter of procedure, by applying the law of the regional circuit."). In considering a Rule 12(b)(6) motion, the court assumes the truth of the counterclaim's factual allegations, though not its legal

1

conclusions. *See Smoke Shop, LLC v. United States,* 761 F.3d 779, 785 (7th Cir. 2014). The court must also consider "documents attached to the [counterclaim], documents that are critical to the [counterclaim] and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Defendants' brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). As required on a Rule 12(b)(6) motion, the facts are set forth as favorably to Defendants as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

Under Rule 12(f), a district court has the discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). As on a Rule 12(b)(6) motion, the court on a Rule 12(f) motion sets forth the facts as favorably to Defendants as the above-referenced materials allow. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) ("Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings."); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975) (Clark, J.) (analyzing a Rule 12(f) motion by "accepting as true the factual underpinnings of the [non-movant's] objections" to the motion). In so doing, the court does not vouch for the accuracy of those facts. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.,* 610 F.3d 382, 384 (7th Cir. 2010).

DS Smith is the owner by assignment of the '467 Patent, entitled "Beverage Dispensing System." Doc. 1 at ¶ 14. The '467 Patent discloses and claims inventions for:

> A system and process for dispensing liquid beverage having a containing vessel, a pouch within a cavity of the containing vessel, a spout connected to the pouch, and a dispensing valve connected to the pouch for controlling the flow of liquid from an interior pocket of the pouch. The pouch of the system

2

has a first panel and a second panel heat sealed together at their respective
bottom and opposing side panels to form an interior pocket between the first
and second panels. The interior pocket is bounded at the sides and bottom
thereof, but has an open top to provide an ingress thereinto for filling the
pouch. The system provides a clean and sanitary means for containing and
dispensing liquid products.

Doc. 1-1 at 2. The vessel, called an "urn," holds beverages; the pouch, called an "urn liner," "allows beverages to be held and dispensed without coming into contact with the urn or dispensing valve." Doc. 1 at ¶ 15.

On December 4, 1998, Matthew Gryzlo and Joseph Fuchs, who acted as patent lawyers for DS Smith's predecessor-in-interest, Packaging Systems, L.L.C., filed the initial application for the patent. Doc. 33 at ¶¶ 65-66, 68. On December 20, 1999, the Patent and Trademark Office ("PTO") rejected the application. *Id*. at ¶ 71. On March 20, 2000, Gryzlo, supervised by Fuchs, filed an amendment and response to the PTO's rejection. *Ibid*. The PTO then issued the '467 Patent on September 12, 2000. Doc. 1 at ¶ 27; Doc. 1-1 at 2.

Plascon makes, sells, and, through Wasserstrom, distributes a product called the "Saftea Liner." Doc. 1 at ¶ 17; Doc. 1-2 at 2; Doc. 1-3. Their marketing materials assert that use of the Saftea Liner "ensur[es] the prevention of bacteria build up from spigots that are not cleaned properly," helps users save money due to reduced cleaning costs in comparison to disposable urn liners, and "ensures a consistent and higher quality taste" than competing products. Doc. 1 at ¶¶ 18-20; Doc. 1-4 at 2-3; Doc. 1-5. The marketing materials also include instructions on using the Saftea Liner in beverage dispensing systems. Doc. 1 at ¶ 21. Brinker, the parent company of the restaurant chains Chili's Grill & Bar and Maggiano's Little Italy, purchases the Saftea Liner for use in its restaurants' beverage dispensing systems. Doc. 1 at ¶¶ 4, 22.

DS Smith alleges that beverage dispensing systems that use the Saftea Liner infringe the '467 Patent. *Id*. at ¶¶ 28-29. The complaint alleges that Brinker infringes the patent by making

3

and using these systems, *id*. at ¶ 28; that Plascon infringes the patent by making and using these systems, knowingly induces the infringement of the patent by "providing instructions for assembly and use of the Saftea Liner in beverage dispensing systems," and contributorily infringes the patent by providing Saftea Liners to customers, *id*. at ¶¶ 29-31; and that Wasserstrom knowingly induces the infringement of and contributorily infringes the patent through its distribution of the Saftea Liner, *id*. at ¶¶ 32-33. DS Smith sent letters to Plascon on October 6, 2014, and to Brinker on April 21, 2015, informing them of its belief that use of the Saftea Liner infringes the '467 Patent. *Id*. at ¶¶ 23-24.

On June 29, 2015, Plaintiffs filed this suit. Doc. 1. Plascon and Brinker jointly filed an answer, counterclaims, and affirmative defenses. Doc. 33. The third counterclaim and seventh affirmative defense—which for ease of reference will be referred to together as the "counterclaim"—allege that the '467 Patent is unenforceable due to inequitable conduct. Doc. 33 at ¶¶ 44, 63-224. Wasserstrom filed its own answer, Doc. 25, and the court from this point forward uses "Defendants" to refer only to Plascon and Brinker.

The counterclaim primarily concerns the actions of Gryzlo and Fuchs during prosecution of the application for the '467 Patent. Doc. 33 at ¶¶ 65-66, 68. Defendants allege that Gryzlo and Fuchs, including in the amendment and response following the PTO's rejection of the initial application, made positive assertions of novelty over prior art that they knew to be false and also that one or both withheld several prior art references with intent to deceive the PTO. *Id*. at ¶¶ 71-74, 85, 91, 98, 112, 119, 125, 132, 144, 153, 221-223. In support, Defendants point to nine other patents for which Gryzlo and Fuchs oversaw the applications, about which Gryzlo and/or Fuchs communicated to the PTO, and of which Gryzlo and/or Fuchs were aware. *Id*. at ¶¶ 84, 90, 97, 111, 118, 124, 131, 143, 152. Those other patents, Defendants allege, contained prior art

references that, had they been disclosed to the PTO during the pendency of the '467 Patent application, would have caused the PTO to decline to issue at least some of the '467 Patent's claims. *Ibid*. Gryzlo and Fuchs filed information disclosure statements ("IDS") with the PTO in connection with two of the nine other patents, *id*. at ¶¶ 76, 135, responded to "non-final" PTO action with regard to a relevant prior reference, *id*. at ¶ 137, and "directed the filing" of some of the uncited references with the PTO, *id*. at ¶¶ 75, 133, 145.

Defendants also allege that "at least one employee or agent of Packaging Systems," whom they call the "Unnamed Individual," *id*. at ¶ 154, failed to disclose six other prior art references that would have caused the PTO to decline to issue at least some of the '467 Patent's claims. *Id*. at ¶¶ 169-170, 181-182, 196-197, 209-210, 221-23.

## Discussion

As noted, DS Smith has moved to dismiss the inequitable conduct counterclaim and to strike the inequitable conduct affirmative defense. "Patent applicants have a duty to prosecute patent applications in the PTO with candor, good faith, and honesty." *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 829 (Fed. Cir. 2010) (internal quotation marks and alteration omitted); *see also* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the Office all information known to that individual to be material to patentability."). "A breach of this duty—including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information—coupled with an intent to deceive, constitutes inequitable conduct." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,* 488 F.3d 982, 999 (Fed. Cir. 2007). An inequitable conduct claim has two elements: "(1) an individual associated with the filing and

prosecution of a patent application … failed to disclose material information" to the PTO (materiality); and "(2) the individual did so with a specific intent to deceive the PTO" (intent). *Exergen*, 575 F.3d at 1327 n.3.

Federal Circuit law governs whether the alleged facts constitute inequitable conduct. *See id*. at 1318. Concerned that inequitable conduct could "devolve into a magic incantation to be asserted against every patentee," the Federal Circuit requires that inequitable conduct be pleaded with particularity under Rule 9(b). *Id*. at 1326-27, 1331; *see also Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.,* 482 F.3d 1347, 1356–57 (Fed. Cir. 2007); *Ferguson Beauregard,* 350 F.3d at 1344. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Exergen,* 575 F.3d 1326-27. Support for an inequitable conduct claim requires "[a] reasonable inference … that is plausible and that flows logically from the facts alleged." *Id.* at 1329 n.5. DS Smith argues that Defendants fail to plead both the materiality and intent elements of the inequitable conduct counterclaim.

A. **Materiality**

To satisfy Rule 9(b) as to materiality, a pleading must set forth the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). DS Smith contends that Defendants did not plead the "who," "how," and "what." Doc. 44 at 8-11; Doc. 48 at 4-9.

With regard to "who," a party alleging inequitable conduct must "name the specific individual associated with the filing or prosecution of the application issuing as the … patent, who both knew of the material information and deliberately withheld or misrepresented it."

*Exergen*, 575 F.3d at 1329. In *Exergen*, the Federal Circuit held inadequate a pleading that simply "refer[red] generally to 'Exergen, its agents and/or attorneys'" without naming specific individuals. *Ibid*. DS Smith argues that Defendants similarly "fail to specifically identify who withheld material information." Doc. 44 at 10.

This argument fails to persuade. The counterclaim attributes inequitable conduct to the applicants for the '467 Patent, which include three business entities, two law firms, and six people. Doc. 33 at ¶ 65. DS Smith focuses on this broad list, Doc. 44 at 11; Doc. 48 at 7-8, but the counterclaim directly names Gryzlo and Fuchs as the specific individuals who knew of and withheld nine prior art references from the PTO during prosecution of the '467 Patent. Doc. 33 at ¶¶ 74, 85, 91, 98, 112, 119, 125, 132, 144, 153, 221-223. That is more than sufficient to satisfy Rule 9(b)'s "who" requirement.

It is true that Defendants attribute the failure to disclose six prior art references exclusively to the Unnamed Individual, whom the counterclaim describes as "at least one employee or agent of Packaging Systems, LLC" who "will only be identified during discovery." *Id*. at ¶ 154; *see id.* at ¶¶ 169-170, 181-182, 196-197, 209-210, 221-23. DS Smith argues that "nowhere in the specific separate allegations of inequitable conduct" attributed to the Unnamed Individual "does Plascon even refer to Mr. Gryzlo or Mr. Fuchs," which means that the Unnamed Individual "cannot be the 'who' with respect to the allegations made in those paragraphs." Doc. 48 at 8. DS Smith's argument cannot be reconciled with the principle that "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, __ F.3d __, 2015 WL 8021983, at *6 (7th Cir. Dec. 7, 2015). Even though ¶¶ 154-220 of the inequitable conduct counterclaim,

7

which refer to the six undisclosed prior art references, do not refer to Fuchs and Gryzlo, ¶¶ 68-153 of the counterclaim, which refer to nine undisclosed prior art references, do. Because the counterclaim could proceed even if it alleged only nine undisclosed prior art references, it satisfies Rule 9(b). And under *BBL*, DS Smith cannot obtain dismissal of the part of the counterclaim resting on the six other alleged undisclosed prior art references.

This rationale also defeats DS Smith's argument that Defendants failed to plead the "what" of the materiality. Doc. 48 at 8-9. DS Smith contends that with respect to two of the uncited references, European Patent Nos. EP1147055 and EP0777604, Doc. 33 at ¶¶ 211-220, Defendants do "not identify a specific prior art reference that was withheld from the PTO during prosecution of the 467 patent, let alone explain where material information is located within the prior art reference." Doc. 48 at 8. Even if DS Smith were right, that leaves thirteen other allegedly undisclosed prior art references, which are more than sufficient to support an inequitable conduct counterclaim. In any event, DS Smith forfeited this argument by not raising it until its reply brief. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue.").

Finally, relying on *Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc), DS Smith argues that Defendants have not sufficiently alleged the "how" of materiality. Doc. 44 at 8-10; Doc. 48 at 4-7. Although *Therasense* refined the requirements for *proving* inequitable conduct, *id*. at 1287, it did not address the requirements for *pleading* inequitable conduct, and thus preserved the pleading standards articulated in *Exergen*.

8

*See Delano Farms Co. v. Cal. Table Grape Comm'n,* 655 F.3d 1337, 1350 (Fed. Cir. 2011) (in a post-*Therasense* decision, citing *Exergen* for the proposition "[a] charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO"); *Sloan Valve Co. v. Zurn Indus., Inc.*, 2012 WL 1108129, at *4 (N.D. Ill. Apr. 1, 2012) (discussing the distinction between *Exergen*'s pleading requirement and *Therasense*'s proof requirement). Still, "in assessing the materiality of a withheld reference," *Therasense* governs whether the counterclaim's allegations support a reasonable inference that "the PTO would not have allowed the claim if it had been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291. "Because neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references … constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality." *Id.* at 1292-93; *see also Sloan Valve Co.*, 2012 WL 1108129, at *5 (applying this standard); *Capital Mach. Co., Inc. v. Miller Veneers, Inc.,* 2012 WL 243563, at *3 (S.D. Ind. Jan. 25, 2012) (noting that under *Therasense*, "materiality requires that the patent would not have issued but for the misrepresentation").

Applying the governing standard, Defendants adequately plead that the PTO would not have allowed certain claims of the '467 Patent had it been aware of any of the nine undisclosed prior art references tied to Gryzlo and Fuchs. Specifically, Defendants allege that the amendment and response that Gryzlo, supervised by Fuchs, filed during prosecution of the '467 Patent, which asserted the novelty over prior art of "a separate elongated dispensing tube removably connected, to the spout," a "separate dispensing tube … inserted into an aperture in

9

the dispensing valve," "a separate dispensing valve connected to the spout to control flow throughout the spout and an interior of the dispensing valve," and "a dispensing valve which, when connected to the spout, is dimensioned to extend through the second opening in the container and to be removably secured to the containing vessel," was highly material and that at least claims 1 and 11 of the '467 Patent would not have issued without it. Doc. 33 at ¶¶ 71-74, 84, 90, 97, 111, 118, 124, 131, 144, 147, 152. This allegation is supported by the further allegation that prior to the amendment and response's assertion of novelty for these components, the PTO had rejected the initial application. *Id.* at ¶ 71. In other words, prior to the assertion of novelty, claims 1 and 11 did not issue, while after the assertion of novelty, they did. That is the essence of but-for materiality. *See Therasense*, 649 F.3d at 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."). The fact that the counterclaim "does not even recite the word[s] 'anticipated' or 'obvious,'" Doc. 48 at 5, does not alter the basic doctrinal (or common-sense) requirements for but-for materiality.

DS Smith retorts that the uncited references speak to only one or some "of several limitations recited by claim 1" of the '467 patent. Doc. 48 at 4-5. Because "[a] patent claim is anticipated if a single prior art reference expressly or inherently discloses every limitation of the claim," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1252 (Fed. Cir. 2014); *see also Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 975 (Fed. Cir. 2010) ("[A] single prior art reference must expressly or inherently disclose each claim limitation to anticipate a claim."), the uncited references, DS Smith asserts, cannot support the inequitable conduct counterclaim. But as DS Smith acknowledges, Doc. 48 at 5 n.3, Defendants allege that one of the uncited references, the '681 Prior Art Reference, "teaches every limitation of claim 1 of the '467 Patent."

10

Doc. 33 at ¶ 110. This alone is sufficient to defeat DS Smith's argument on a Rule 12(b)(6) motion. The court also notes that the uncited references in combination refer to several permutations of a containing vessel, *id*. at ¶¶ 108, 121, a pouch, *id*. at ¶ 102, a spout, *id*. at ¶¶ 81, 93, 106, 165, 192, a dispensing tube, *id*. at ¶¶ 81, 87, 93, 107, 115, 128, 165, 192, 205, and a dispensing valve, *id*. at ¶¶ 94, 108, 121, removably connected together, which exhausts all of the limitations recited by claims 1 and 11. Doc. 1-1 at 10-11. The claim charts that Defendant presents with its opposition to the motion to dismiss, Docs. 47-2, 47-3, illustrate this point.

DS Smith contends that the court may not consider the charts because they were not included with the counterclaim. Doc. 48 at 6. As noted above, however, a non-movant may set forth additional facts in a Rule 12(b)(6) opposition brief so long as those facts "are consistent with the pleadings," *Phillips*, 714 F.3d at 1020, and the claim charts are consistent with the counterclaim. The counterclaim alleges that the '681 Prior Art Reference and the '885 Prior Reference anticipate at least claim 1 of the '467 Patent. Doc. 33 at ¶¶ 110, 131. The claim charts illustrate those allegations. Accordingly, and contrary to DS Smith's submission, the charts are not "an improper attempt to amend the counterclaim." Doc. 48 at 6. To be clear, the court does not, and on this motion need not, find that the uncited references actually *did* anticipate claims 1 and 11; the court observes only that Defendants have pleaded "facts that suggest a right to relief that is beyond the speculative level." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

DS Smith correctly notes that Defendants have not explained "the specific statutory basis on which the examiner would have rejected the ['467 Patent] claim in view of the [uncited] references," Doc. 44 at 9, but that is unnecessary at the pleading stage. Rather, to plead the "how" of materiality, the counterclaim need only "identify the particular claim limitations, or

11

combination of claim limitations, that are supposedly absent from the information" available to the PTO examiner as a result of a material omission. *Exergen*, 575 F.3d at 1329. For nearly all of the uncited references, Defendants have identified the claims that would not have issued but for Gryzlo's and Fuchs's alleged inequitable conduct. Doc. 33 at ¶¶ 84, 90, 110, 111, 118, 152, 169, 196, 209 (claim 1); *id*. at ¶¶ 124 (claim 11). The specificity of these allegations distinguishes Defendants' inequitable conduct counterclaim from the circumstances in *Exergen*, where the inequitable conduct allegation did not identify which of the patent's claims would not have issued had the uncited references been disclosed. *See Exergen*, 575 F.3d at 1329-30. The specificity of Defendants' allegations also distinguishes this case from others cited by DS Smith, where the inequitable conduct claims either referred vaguely to the invalidation of "at least one of the claims" in the patent, *see Conagra Foods Food Ingredients Co. v. Archer-Daniels-Midland Co.*, 2014 WL 359566, at *2 (D. Kan. Feb. 3, 2014), or made "conclusory statement[s]" that the patent would not have issued without specifying the claims that would have been invalid, *see Aevoe Corp. v. AE Tech. Co., Ltd.*, 2013 WL 876036, at *8 (D. Nev. Mar. 7, 2013).

    **B.**    **Intent**

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. "[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen,* 575 F.3d 1328-29. The court "may not infer intent solely from materiality." *Therasense*, 649 F.3d at 1290. "Intent and materiality are separate requirements. A district court should not use a

12

'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Ibid*. (citation omitted); *see also In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) ("Materiality and intent must be separately established.").

DS Smith contends that Defendants do not "plead any factual basis to infer that any specific individual knew of specific material information within the Uncited References or knew that such information was but-for material." Doc. 44 at 12-13 (emphases omitted). Because an uncited "reference may be many pages long, and its various teachings may be relevant to different applications for different reasons … one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference." *Exergen*, 575 F.3d at 1330; *see also Therasense*, 649 F.3d at 1290 ("[T]he accused infringer must prove … that the applicant knew of the reference [and] knew that it was material."). DS Smith asserts that the counterclaim does not satisfy the intent requirement because it pleads only "general knowledge of a purportedly withheld prior art reference." Doc. 44 at 13; Doc. 48 at 11-12.

DS Smith is incorrect. Unlike in *Exergen*, "deceptive intent in this case" is not "pleaded solely on information and belief." *Exergen*, 575 F.3d at 1330 (alterations omitted). Defendants do not plead only that the applicants had general knowledge of the fifteen undisclosed prior art references or, as DS Smith would have it, that Gryzlo and Fuchs simply "had become aware" of the prior references. Doc. 48 at 11. Defendants instead allege that Gryzlo, Fuchs, and the Unnamed Individual filed information disclosure statements in other patent applications with the PTO in connection with relevant prior art references, Doc. 33 at ¶¶ 76, 135, 185; responded to "non-final" PTO action with regard to relevant prior references, *id*. at ¶¶ 137, 159; and "directed

13

the filing" of some of the uncited references with the PTO, *id*. at ¶¶ 75, 133, 145, 171, 183, 198, 211, 216.  Construing the facts most favorably to the Defendants, *see Meade*, 770 F.3d at 682, these allegations give rise to the reasonable inference that those individuals had knowledge of the specific material information contained in the uncited references.

DS Smith retorts that even if Gryzlo, Fuchs, or the Unnamed Individual cited the prior art references in information disclosure statements during prosecution of other patents, "one cannot assume that [they] knew any information in the Uncited References was material to the claims of the 467 patent."  Doc. 48 at 11.  This is true as far as it goes, but to survive a Rule 12(b)(6) motion, a complaint need only "contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  Here, the allegations that Gryzlo, Fuchs, and the Unnamed Individual were actively involved through information disclosure statements, direct communication with the PTO, and oversight of the application filing of many of the prior art references plausibly supports the proposition that they knew that the prior art references were material to the '467 Patent.

DS Smith next argues that Defendants' opposition brief cannot rely on information disclosure statements to forestall dismissal because the counterclaim itself does not allege that the IDSs submitted by Gryzlo and Fuchs to the PTO during the prosecution of the uncited references actually contained the relevant prior art references.  Doc. 48 at 10.  Like DS Smith's argument regarding the claim charts, this argument fails because the facts in the opposition brief

regarding the IDSs—which provides specific examples of the prior art references provided to the PTO in the IDSs that Gryzlo and Fuchs filed, Doc. 47 at 13-14—"are consistent with the pleadings," *Phillips*, 714 F.3d at 1020, and therefore must be considered here.

Finally, DS Smith contends that Defendants do not adequately plead that Gryzlo, Fuchs, and the Unnamed Individual intended to "deliberately withhold" the prior art references. Doc. 44 at 14-15; Doc. 48 at 13-14. As DS Smith notes, "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." *Exergen*, 575 F.3d at 1331; *see also 1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1372-73 (Fed. Cir. 2012) ("A court can no longer infer intent to deceive from non-disclosure of a reference solely because that reference was known and material.") (citing *Therasense*, 649 F.3d at 1290); *see* Doc. 44 at 14; Doc. 48 at 12-13, 13-14. But Defendants allege much more than that, including that in response to the PTO's initial rejection, Gryzlo and Fuchs made positive assertions of novelty about several features critical to the issuance of the '467 Patent, each of which were taught in one or more of the uncited references and all of which were taught by the '681 Prior Art Reference. Doc. 33 at ¶ 71, 74, 99-112; Doc. 47 at 15. Those allegations go far beyond the "mere fact" of non-disclosure and, together with the allegations that Gryzlo and Fuchs intended to deceive the PTO by not disclosing the withheld prior references, suffice to defeat a motion to dismiss.

Although Defendants do not have direct evidence of Gryzlo's and Fuchs's deliberate decision to withhold the prior references, they do not need such evidence to succeed on the merits, much less to survive a Rule 12(b)(6) motion: "because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Am. Calcar,*

*Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1190-91 (Fed. Cir. 2014) (quoting *Therasense*, 649 F.3d at 1290). Unlike the claim in *Exergen*, Defendants' inequitable conduct counterclaim "contain[s] specific factual allegations to show that" Gryzlo and Fuchs "knew of the specific information that is alleged to be material to the ['467] patent and then deliberately decided to withhold it from the" PTO. *Exergen*, 575 F.3d at 1331. This is all that is required at this stage. Whether the evidence confirms or refutes Defendants' untested allegations is a matter for another day.

## Conclusion

For the foregoing reasons, DS Smith's motion to dismiss the inequitable conduct counterclaim and to strike the inequitable conduct affirmative defense is denied. DS Smith shall answer all of the counterclaims by January 27, 2016.

January 6, 2016

United States District Judge